# EXHIBIT 1

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES, | CL NO. 122520 |
| Plaintiff, | |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE ADVANTAGE MORTGAGE CO., KARLA NEEL, AND SARA SAGERS, | **ORIGINAL NOTICE** |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT(S):    NATIONWIDE MUTUAL INSURANCE CO.

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the respondent in this action. A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Whitney Judkins of Fiedler & Timmer, P.L.L.C., whose address is 2900 – 100th Street, Suite 209, Urbandale, Iowa 50322. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County, at the county courthouse in Des Moines, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa 50309

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

# EXHIBIT 1

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE CO.,<br>NATIONWIDE ADVANTAGE MORTGAGE<br>CO., KARLA NEEL AND SARA SAGERS,<br><br>    Defendants. | NO. CL 122520<br><br><br>PETITION AND JURY DEMAND |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action hereby states the following:

### INTRODUCTION

1.    This is an employment discrimination action filed under the Iowa Civil Rights Act, Title VII of the Civil Rights Act of 1964, and the Patient Protection and Affordable Care Act, challenging Defendants' sex discrimination, pregnancy discrimination, retaliation and nursing discrimination toward the Plaintiff.

2.    Plaintiff Angela Ames is a resident and citizen of Panora, Guthrie County, Iowa.

3.    Defendant Nationwide Mutual Insurance Company is an Ohio corporation doing business in Des Moines, Polk County, Iowa.

4.    Defendant Nationwide Advantage Mortgage Company (hereinafter "Nationwide") is an Iowa corporation doing business in Des Moines, Polk County, Iowa.

5.    Defendant Karla Neel is a resident of Des Moines, Polk County, Iowa.

6.    Defendant Sara Sagers is a resident of Bondurant, Polk County, Iowa.

# EXHIBIT 1

7.     The acts of which Plaintiff complains occurred in Des Moines, Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

8.     On approximately August 13, 2010, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

9.     On approximately March 23, 2011, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

10.     On approximately April 19, 2011, less than 90 days prior to the filing of this Petition, the Equal Employment Opportunity Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

11.     On approximately October 1, 2008, Plaintiff began working for Defendant Nationwide as a Loss Mitigation Specialist.

12.     On May 2, 2009, Plaintiff had her first child and took eight weeks of maternity leave following his birth, returning to work in July 2009.

13.     In November 2009, Plaintiff found out that she was pregnant again and immediately notified the Defendants.

14.     Approximately 20 weeks into her pregnancy, Plaintiff started going into pre-term labor and beginning April 11, 2010, Plaintiff's doctor put her on bed rest.

15.     Plaintiff began leave due to her pregnancy on April 12, 2010.

2

# EXHIBIT 1

16.     After discussions with her immediate supervisor, Brian Brinks, and Som Baccam with Human Resources, it was decided that she would be on leave from work until August 2, 2010.

17.     Plaintiff gave birth to her son on May 18, 2010.

18.     On June 21, 2010, Karla Neel, the head of Plaintiff's department, notified Plaintiff that her short term disability leave ran out on July 12, 2010, that she needed to return to work, and that Ms. Neel would hold Plaintiff's position only until July 19, 2010.

19.     On July 19, 2010, Plaintiff returned to work at approximately 10:00 a.m., after taking her son to his eight week well-baby check-up.

20.     Plaintiff started her computer and then told her supervisor, Mr. Brinks, that she needed to "see about getting a room," in order to pump breast milk for her infant son.

21.     Plaintiff had last nursed her son at approximately 6:50 a.m. that morning, and he was nursing about every 3 hours.

22.     Plaintiff was beginning to feel uncomfortable because it had been more than three hours since the last time she had expressed milk.

23.     Plaintiff inquired about a private room to express milk and was told by Karla Neel that it was "not her department."

24.     Plaintiff took it upon herself to ask the security guard who informed her she should see the company nurse, Sara Sagers.

25.     Prior to Plaintiff's return to work, no one had ever informed Defendants who she should see about getting a room or how to gain access to a lactation room.

# EXHIBIT 1

26.     Ms. Sagers informed Plaintiff that Nationwide policy required her to fill out paperwork to be placed on a list for the lactation rooms and that there would be a three-day waiting period while this paperwork was processed.

27.     Ms. Sagers printed out a copy of this paperwork and also emailed it to Plaintiff's Nationwide email account.

28.     Prior to Plaintiff's return to work, Defendants never informed Plaintiff that there was a three-day waiting period required in order to use Nationwide's lactation room or that forms needed to be filled out.

29.     Plaintiff informed Ms. Sagers that she needed to express milk immediately.

30.     Ms. Sagers told Plaintiff that she could use a wellness room, although she added that Nationwide did not recommend that nursing mothers use wellness rooms to express milk because the rooms are intended for sick people and her milk might become contaminated because it could be exposed to illnesses.

31.     Ms. Sagers directed Plaintiff to a wellness room that was currently occupied by a sick person, but suggested it might be available if she returned in 15 to 20 minutes.

32.     Ms. Sagers also informed Plaintiff that the wellness room had a broken door, so she would have to lodge the chair up against the door and sit in it while she pumped so that if someone walked in on her, her body in the chair would block the intruder from seeing her breasts.

33.     Ms. Sagers also informed Plaintiff that she should tell her supervisor that she would make up any time that she missed due to expressing milk.

34.     Despite being in extreme discomfort and needing to express milk, Plaintiff went back to her desk to work while she waited to check on the wellness room again.

# EXHIBIT 1

35.     While waiting to check on the wellness room, Mr. Brinks and Plaintiff had a meeting regarding the status of her work.

36.     Mr. Brinks was supposed to take over Plaintiff's work during her leave, but nothing had been done while she had been gone.

37.     During the meeting, Mr. Brinks notified Plaintiff that she had only two weeks, until August 1, 2010, to get caught up on all the work that had accumulated during her eight-week absence.

38.     Mr. Brinks notified Plaintiff that she would need to work a great deal of overtime to get caught up.

39.     Mr. Brinks warned Plaintiff that he would begin to discipline her if she was not completely caught up within two weeks.

40.     Plaintiff began to panic about all the extra hours it would take her to get caught up on the work that had not been done during her maternity leave, as well as the time necessary  to make up for the breaks she would need to express milk for her newborn baby.

41.     Plaintiff knew that she would never be able to catch up by August 1 and that she would begin to be written up at that time.

42.     After learning of Nationwide's policy requiring a three-day waiting period to be placed on the list to reserve a lactation room, her urgent need to express milk and Defendants' unrealistic and unreasonable expectations about her work production immediately upon her return from maternity leave, Plaintiff felt like she had no choice but to resign her employment.

43.     Plaintiff tried to discuss her feelings of despair with Ms. Neel and explore any options that might be available to her to accommodate her need to provide breast milk for her son.

# EXHIBIT 1

44.     Ms. Neel told Plaintiff to "do what she felt she needed to do." She handed Plaintiff a piece of paper and encouraged her to tender her resignation immediately and instructed Plaintiff on what to write.

45.     Ms. Neel also asked Plaintiff to "leave her things" and asked Plaintiff to act as if she was just leaving for lunch so as to not cause a disturbance.

46.     Plaintiff was constructively discharged on July 19, 2010.

47.     Karla Neel was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

48.     Sara Sagers was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

**COUNT I**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT**
**SEX AND PREGNANCY DISCRIMINATION**

49.     Plaintiff repleads paragraphs 1 through 48 as if fully set forth herein.

50.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her pregnancy and sex in violation of the Iowa Civil Rights Act.

51.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

52.     Defendants acted with willful and wanton disregard for Plaintiff's rights and safety.

# EXHIBIT 1

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.     Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her pregnancy and sex in violation of Title VII of the Civil Rights Act of 1964.

55.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

56.     Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter it and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be

# EXHIBIT 1

just in the circumstances and consistent with the purpose of Title VII of the 1964 Civil Rights

Act.

### COUNT III
### VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
### 29 U.S.C. § 4207

57.     Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.     Defendants were required to provide Plaintiff with reasonable time to express

breast milk in a private location, free from intrusion and shielded from the view of the public or

other employees, at the time necessary to express breast milk.

59.      Defendants refused Plaintiff reasonable time to express breast milk.

60.     Defendants failed to provide Plaintiff with a private location free from intrusion

and shielded from the view of other employees.

61.     Defendants refused to provide Plaintiff a room at the time she needed to express

breast millk.

62.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in

the future suffer damages including, but not limited to mental and emotional distress; anguish;

humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life;

lost wages; benefits; and other emoluments of employment.

63.     Defendants acted with malice and reckless indifference for Plaintiff's rights and

safety.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in

an amount which will fully and fairly compensate her for her injuries and damages, for punitive

damages in an amount sufficient to punish Defendants and deter them and others, for interest as

allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and

# EXHIBIT 1

injunctive relief, and for such other relief as may be just in the circumstances and consistent with

the purpose of the Patient Protection and Affordable Care Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury in the above-captioned

matter.

FIEDLER & TIMMER, P.L.L.C.

Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT 0010357
whitney@employmentlawiowa.com
2900 – 100th Street, Suite 209
Urbandale, IA 50322
Telephone:  (515) 254-1999
Fax:  (515) 254-9923
ATTORNEYS FOR PLAINTIFF

# EXHIBIT 1

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES, | CL NO. 122520 |
| Plaintiff, | |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE ADVANTAGE MORTGAGE CO., KARLA NEEL, AND SARA SAGERS, | **ORIGINAL NOTICE** |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT(S):   SARA SAGERS

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the respondent in this action. A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Whitney Judkins of Fiedler & Timmer, P.L.L.C., whose address is 2900 – 100th Street, Suite 209, Urbandale, Iowa 50322. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County, at the county courthouse in Des Moines, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa 50309

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

# EXHIBIT 1

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE CO.,<br>NATIONWIDE ADVANTAGE MORTGAGE<br>CO., KARLA NEEL AND SARA SAGERS,<br><br>    Defendants. | NO. CL 122520<br><br><br>PETITION AND JURY DEMAND |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action hereby states the following:

## INTRODUCTION

1.      This is an employment discrimination action filed under the Iowa Civil Rights Act, Title VII of the Civil Rights Act of 1964, and the Patient Protection and Affordable Care Act, challenging Defendants' sex discrimination, pregnancy discrimination, retaliation and nursing discrimination toward the Plaintiff.

2.      Plaintiff Angela Ames is a resident and citizen of Panora, Guthrie County, Iowa.

3.      Defendant Nationwide Mutual Insurance Company is an Ohio corporation doing business in Des Moines, Polk County, Iowa.

4.      Defendant Nationwide Advantage Mortgage Company (hereinafter "Nationwide") is an Iowa corporation doing business in Des Moines, Polk County, Iowa.

5.      Defendant Karla Neel is a resident of Des Moines, Polk County, Iowa.

6.      Defendant Sara Sagers is a resident of Bondurant, Polk County, Iowa.

# EXHIBIT 1

7.    The acts of which Plaintiff complains occurred in Des Moines, Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

8.    On approximately August 13, 2010, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

9.    On approximately March 23, 2011, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

10.    On approximately April 19, 2011, less than 90 days prior to the filing of this Petition, the Equal Employment Opportunity Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

11.    On approximately October 1, 2008, Plaintiff began working for Defendant Nationwide as a Loss Mitigation Specialist.

12.    On May 2, 2009, Plaintiff had her first child and took eight weeks of maternity leave following his birth, returning to work in July 2009.

13.    In November 2009, Plaintiff found out that she was pregnant again and immediately notified the Defendants.

14.    Approximately 20 weeks into her pregnancy, Plaintiff started going into pre-term labor and beginning April 11, 2010, Plaintiff's doctor put her on bed rest.

15.    Plaintiff began leave due to her pregnancy on April 12, 2010.

2

# EXHIBIT 1

16.     After discussions with her immediate supervisor, Brian Brinks, and Som Baccam with Human Resources, it was decided that she would be on leave from work until August 2, 2010.

17.     Plaintiff gave birth to her son on May 18, 2010.

18.     On June 21, 2010, Karla Neel, the head of Plaintiff's department, notified Plaintiff that her short term disability leave ran out on July 12, 2010, that she needed to return to work, and that Ms. Neel would hold Plaintiff's position only until July 19, 2010.

19.     On July 19, 2010, Plaintiff returned to work at approximately 10:00 a.m., after taking her son to his eight week well-baby check-up.

20.     Plaintiff started her computer and then told her supervisor, Mr. Brinks, that she needed to "see about getting a room," in order to pump breast milk for her infant son.

21.     Plaintiff had last nursed her son at approximately 6:50 a.m. that morning, and he was nursing about every 3 hours.

22.     Plaintiff was beginning to feel uncomfortable because it had been more than three hours since the last time she had expressed milk.

23.     Plaintiff inquired about a private room to express milk and was told by Karla Neel that it was "not her department."

24.     Plaintiff took it upon herself to ask the security guard who informed her she should see the company nurse, Sara Sagers.

25.     Prior to Plaintiff's return to work, no one had ever informed Defendants who she should see about getting a room or how to gain access to a lactation room.

3

# EXHIBIT 1

26.     Ms. Sagers informed Plaintiff that Nationwide policy required her to fill out paperwork to be placed on a list for the lactation rooms and that there would be a three-day waiting period while this paperwork was processed.

27.     Ms. Sagers printed out a copy of this paperwork and also emailed it to Plaintiff's Nationwide email account.

28.     Prior to Plaintiff's return to work, Defendants never informed Plaintiff that there was a three-day waiting period required in order to use Nationwide's lactation room or that forms needed to be filled out.

29.     Plaintiff informed Ms. Sagers that she needed to express milk immediately.

30.     Ms. Sagers told Plaintiff that she could use a wellness room, although she added that Nationwide did not recommend that nursing mothers use wellness rooms to express milk because the rooms are intended for sick people and her milk might become contaminated because it could be exposed to illnesses.

31.     Ms. Sagers directed Plaintiff to a wellness room that was currently occupied by a sick person, but suggested it might be available if she returned in 15 to 20 minutes.

32.     Ms. Sagers also informed Plaintiff that the wellness room had a broken door, so she would have to lodge the chair up against the door and sit in it while she pumped so that if someone walked in on her, her body in the chair would block the intruder from seeing her breasts.

33.     Ms. Sagers also informed Plaintiff that she should tell her supervisor that she would make up any time that she missed due to expressing milk.

34.     Despite being in extreme discomfort and needing to express milk, Plaintiff went back to her desk to work while she waited to check on the wellness room again.

# EXHIBIT 1

35.     While waiting to check on the wellness room, Mr. Brinks and Plaintiff had a meeting regarding the status of her work.

36.     Mr. Brinks was supposed to take over Plaintiff's work during her leave, but nothing had been done while she had been gone.

37.     During the meeting, Mr. Brinks notified Plaintiff that she had only two weeks, until August 1, 2010, to get caught up on all the work that had accumulated during her eight-week absence.

38.     Mr. Brinks notified Plaintiff that she would need to work a great deal of overtime to get caught up.

39.     Mr. Brinks warned Plaintiff that he would begin to discipline her if she was not completely caught up within two weeks.

40.     Plaintiff began to panic about all the extra hours it would take her to get caught up on the work that had not been done during her maternity leave, as well as the time necessary to make up for the breaks she would need to express milk for her newborn baby.

41.     Plaintiff knew that she would never be able to catch up by August 1 and that she would begin to be written up at that time.

42.     After learning of Nationwide's policy requiring a three-day waiting period to be placed on the list to reserve a lactation room, her urgent need to express milk and Defendants' unrealistic and unreasonable expectations about her work production immediately upon her return from maternity leave, Plaintiff felt like she had no choice but to resign her employment.

43.     Plaintiff tried to discuss her feelings of despair with Ms. Neel and explore any options that might be available to her to accommodate her need to provide breast milk for her son.

# EXHIBIT 1

44.    Ms. Neel told Plaintiff to "do what she felt she needed to do." She handed Plaintiff a piece of paper and encouraged her to tender her resignation immediately and instructed Plaintiff on what to write.

45.    Ms. Neel also asked Plaintiff to "leave her things" and asked Plaintiff to act as if she was just leaving for lunch so as to not cause a disturbance.

46.    Plaintiff was constructively discharged on July 19, 2010.

47.    Karla Neel was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

48.    Sara Sagers was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

## COUNT I
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### SEX AND PREGNANCY DISCRIMINATION

49.    Plaintiff repleads paragraphs 1 through 48 as if fully set forth herein.

50.    Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her pregnancy and sex in violation of the Iowa Civil Rights Act.

51.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

52.    Defendants acted with willful and wanton disregard for Plaintiff's rights and safety.

# EXHIBIT 1

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.     Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her pregnancy and sex in violation of Title VII of the Civil Rights Act of 1964.

55.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

56.     Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter it and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be

# EXHIBIT 1

just in the circumstances and consistent with the purpose of Title VII of the 1964 Civil Rights Act.

## COUNT III
### VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
### 29 U.S.C. § 4207

57.     Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.     Defendants were required to provide Plaintiff with reasonable time to express breast milk in a private location, free from intrusion and shielded from the view of the public or other employees, at the time necessary to express breast milk.

59.     Defendants refused Plaintiff reasonable time to express breast milk.

60.     Defendants failed to provide Plaintiff with a private location free from intrusion and shielded from the view of other employees.

61.     Defendants refused to provide Plaintiff a room at the time she needed to express breast millk.

62.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

63.     Defendants acted with malice and reckless indifference for Plaintiff's rights and safety.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and

# EXHIBIT 1

injective relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Patient Protection and Affordable Care Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury in the above-captioned matter.

FIEDLER & TIMMER, P.L.L.C.

Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT 0010357
whitney@employmentlawiowa.com
2900 – 100th Street, Suite 209
Urbandale, IA 50322
Telephone:  (515) 254-1999
Fax:  (515) 254-9923
ATTORNEYS FOR PLAINTIFF

# EXHIBIT 1

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES, | CL NO. 122520 |
| Plaintiff, | |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE ADVANTAGE MORTGAGE CO., KARLA NEEL, AND SARA SAGERS, | **ORIGINAL NOTICE** |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT(S):   KARLA NEEL

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the respondent in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Brooke Timmer and Whitney Judkins of Fiedler & Timmer, P.L.L.C., whose address is 2900 – 100th Street, Suite 209, Urbandale, Iowa 50322.  Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County, at the county courthouse in Des Moines, Iowa.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa 50309

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

# EXHIBIT 1

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE CO.,<br>NATIONWIDE ADVANTAGE MORTGAGE<br>CO., KARLA NEEL AND SARA SAGERS,<br><br>    Defendants. | NO. CL 122520<br><br><br>PETITION AND JURY DEMAND |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action hereby states the following:

## INTRODUCTION

1.      This is an employment discrimination action filed under the Iowa Civil Rights Act, Title VII of the Civil Rights Act of 1964, and the Patient Protection and Affordable Care Act, challenging Defendants' sex discrimination, pregnancy discrimination, retaliation and nursing discrimination toward the Plaintiff.

2.      Plaintiff Angela Ames is a resident and citizen of Panora, Guthrie County, Iowa.

3.      Defendant Nationwide Mutual Insurance Company is an Ohio corporation doing business in Des Moines, Polk County, Iowa.

4.      Defendant Nationwide Advantage Mortgage Company (hereinafter "Nationwide") is an Iowa corporation doing business in Des Moines, Polk County, Iowa.

5.      Defendant Karla Neel is a resident of Des Moines, Polk County, Iowa.

6.      Defendant Sara Sagers is a resident of Bondurant, Polk County, Iowa.

# EXHIBIT 1

7.     The acts of which Plaintiff complains occurred in Des Moines, Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

8.     On approximately August 13, 2010, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

9.     On approximately March 23, 2011, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

10.     On approximately April 19, 2011, less than 90 days prior to the filing of this Petition, the Equal Employment Opportunity Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

11.     On approximately October 1, 2008, Plaintiff began working for Defendant Nationwide as a Loss Mitigation Specialist.

12.     On May 2, 2009, Plaintiff had her first child and took eight weeks of maternity leave following his birth, returning to work in July 2009.

13.     In November 2009, Plaintiff found out that she was pregnant again and immediately notified the Defendants.

14.     Approximately 20 weeks into her pregnancy, Plaintiff started going into pre-term labor and beginning April 11, 2010, Plaintiff's doctor put her on bed rest.

15.     Plaintiff began leave due to her pregnancy on April 12, 2010.

2

# EXHIBIT 1

16.     After discussions with her immediate supervisor, Brian Brinks, and Som Baccam with Human Resources, it was decided that she would be on leave from work until August 2, 2010.

17.     Plaintiff gave birth to her son on May 18, 2010.

18.     On June 21, 2010, Karla Neel, the head of Plaintiff's department, notified Plaintiff that her short term disability leave ran out on July 12, 2010, that she needed to return to work, and that Ms. Neel would hold Plaintiff's position only until July 19, 2010.

19.     On July 19, 2010, Plaintiff returned to work at approximately 10:00 a.m., after taking her son to his eight week well-baby check-up.

20.     Plaintiff started her computer and then told her supervisor, Mr. Brinks, that she needed to "see about getting a room," in order to pump breast milk for her infant son.

21.     Plaintiff had last nursed her son at approximately 6:50 a.m. that morning, and he was nursing about every 3 hours.

22.     Plaintiff was beginning to feel uncomfortable because it had been more than three hours since the last time she had expressed milk.

23.     Plaintiff inquired about a private room to express milk and was told by Karla Neel that it was "not her department."

24.     Plaintiff took it upon herself to ask the security guard who informed her she should see the company nurse, Sara Sagers.

25.     Prior to Plaintiff's return to work, no one had ever informed Defendants who she should see about getting a room or how to gain access to a lactation room.

# EXHIBIT 1

26.     Ms. Sagers informed Plaintiff that Nationwide policy required her to fill out paperwork to be placed on a list for the lactation rooms and that there would be a three-day waiting period while this paperwork was processed.

27.     Ms. Sagers printed out a copy of this paperwork and also emailed it to Plaintiff's Nationwide email account.

28.     Prior to Plaintiff's return to work, Defendants never informed Plaintiff that there was a three-day waiting period required in order to use Nationwide's lactation room or that forms needed to be filled out.

29.     Plaintiff informed Ms. Sagers that she needed to express milk immediately.

30.     Ms. Sagers told Plaintiff that she could use a wellness room, although she added that Nationwide did not recommend that nursing mothers use wellness rooms to express milk because the rooms are intended for sick people and her milk might become contaminated because it could be exposed to illnesses.

31.     Ms. Sagers directed Plaintiff to a wellness room that was currently occupied by a sick person, but suggested it might be available if she returned in 15 to 20 minutes.

32.     Ms. Sagers also informed Plaintiff that the wellness room had a broken door, so she would have to lodge the chair up against the door and sit in it while she pumped so that if someone walked in on her, her body in the chair would block the intruder from seeing her breasts.

33.     Ms. Sagers also informed Plaintiff that she should tell her supervisor that she would make up any time that she missed due to expressing milk.

34.     Despite being in extreme discomfort and needing to express milk, Plaintiff went back to her desk to work while she waited to check on the wellness room again.

4

# EXHIBIT 1

35.  While waiting to check on the wellness room, Mr. Brinks and Plaintiff had a meeting regarding the status of her work.

36.  Mr. Brinks was supposed to take over Plaintiff's work during her leave, but nothing had been done while she had been gone.

37.  During the meeting, Mr. Brinks notified Plaintiff that she had only two weeks, until August 1, 2010, to get caught up on all the work that had accumulated during her eight-week absence.

38.  Mr. Brinks notified Plaintiff that she would need to work a great deal of overtime to get caught up.

39.  Mr. Brinks warned Plaintiff that he would begin to discipline her if she was not completely caught up within two weeks.

40.  Plaintiff began to panic about all the extra hours it would take her to get caught up on the work that had not been done during her maternity leave, as well as the time necessary to make up for the breaks she would need to express milk for her newborn baby.

41.  Plaintiff knew that she would never be able to catch up by August 1 and that she would begin to be written up at that time.

42.  After learning of Nationwide's policy requiring a three-day waiting period to be placed on the list to reserve a lactation room, her urgent need to express milk and Defendants' unrealistic and unreasonable expectations about her work production immediately upon her return from maternity leave, Plaintiff felt like she had no choice but to resign her employment.

43.  Plaintiff tried to discuss her feelings of despair with Ms. Neel and explore any options that might be available to her to accommodate her need to provide breast milk for her son.

# EXHIBIT 1

44.     Ms. Neel told Plaintiff to "do what she felt she needed to do."  She handed Plaintiff a piece of paper and encouraged her to tender her resignation immediately and instructed Plaintiff on what to write.

45.     Ms. Neel also asked Plaintiff to "leave her things" and asked Plaintiff to act as if she was just leaving for lunch so as to not cause a disturbance.

46.     Plaintiff was constructively discharged on July 19, 2010.

47.     Karla Neel was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

48.     Sara Sagers was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

## COUNT I
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### SEX AND PREGNANCY DISCRIMINATION

49.     Plaintiff repleads paragraphs 1 through 48 as if fully set forth herein.

50.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her pregnancy and sex in violation of the Iowa Civil Rights Act.

51.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

52.     Defendants acted with willful and wanton disregard for Plaintiff's rights and safety.

# EXHIBIT 1

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.    Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54.    Defendants discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her pregnancy and sex in violation of Title VII of the Civil Rights Act of 1964.

55.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

56.    Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter it and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be

# EXHIBIT 1

just in the circumstances and consistent with the purpose of Title VII of the 1964 Civil Rights Act.

## COUNT III
## VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
### 29 U.S.C. § 4207

57.     Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.     Defendants were required to provide Plaintiff with reasonable time to express breast milk in a private location, free from intrusion and shielded from the view of the public or other employees, at the time necessary to express breast milk.

59.     Defendants refused Plaintiff reasonable time to express breast milk.

60.     Defendants failed to provide Plaintiff with a private location free from intrusion and shielded from the view of other employees.

61.     Defendants refused to provide Plaintiff a room at the time she needed to express breast millk.

62.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

63.     Defendants acted with malice and reckless indifference for Plaintiff's rights and safety.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and

# EXHIBIT 1

injective relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Patient Protection and Affordable Care Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury in the above-captioned matter.

FIEDLER & TIMMER, P.L.L.C.

Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT 0010357
whitney@employmentlawiowa.com
2900 – 100th Street, Suite 209
Urbandale, IA 50322
Telephone:  (515) 254-1999
Fax:  (515) 254-9923
ATTORNEYS FOR PLAINTIFF

# EXHIBIT 1

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES, | CL NO. 122520 |
| Plaintiff, | |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE ADVANTAGE MORTGAGE CO., KARLA NEEL, AND SARA SAGERS, | **ORIGINAL NOTICE** |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT(S):   NATIONWIDE ADVANTAGE MORTGAGE CO.

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the respondent in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Brooke Timmer and Whitney Judkins of Fiedler & Timmer, P.L.L.C., whose address is 2900 – 100th Street, Suite 209, Urbandale, Iowa 50322. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County, at the county courthouse in Des Moines, Iowa.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_Randy Osborn_

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa 50309

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

# EXHIBIT 1

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANGELA AMES,<br><br>   Plaintiff,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE CO.,<br>NATIONWIDE ADVANTAGE MORTGAGE<br>CO., KARLA NEEL AND SARA SAGERS,<br><br>   Defendants. | NO. CL 122520<br><br><br>PETITION AND JURY DEMAND |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action hereby states the following:

## INTRODUCTION

1.      This is an employment discrimination action filed under the Iowa Civil Rights Act, Title VII of the Civil Rights Act of 1964, and the Patient Protection and Affordable Care Act, challenging Defendants' sex discrimination, pregnancy discrimination, retaliation and nursing discrimination toward the Plaintiff.

2.      Plaintiff Angela Ames is a resident and citizen of Panora, Guthrie County, Iowa.

3.      Defendant Nationwide Mutual Insurance Company is an Ohio corporation doing business in Des Moines, Polk County, Iowa.

4.      Defendant Nationwide Advantage Mortgage Company (hereinafter "Nationwide") is an Iowa corporation doing business in Des Moines, Polk County, Iowa.

5.      Defendant Karla Neel is a resident of Des Moines, Polk County, Iowa.

6.      Defendant Sara Sagers is a resident of Bondurant, Polk County, Iowa.

# EXHIBIT 1

7.     The acts of which Plaintiff complains occurred in Des Moines, Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

8.     On approximately August 13, 2010, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

9.     On approximately March 23, 2011, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

10.     On approximately April 19, 2011, less than 90 days prior to the filing of this Petition, the Equal Employment Opportunity Commission issued a Right-to-Sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

11.     On approximately October 1, 2008, Plaintiff began working for Defendant Nationwide as a Loss Mitigation Specialist.

12.     On May 2, 2009, Plaintiff had her first child and took eight weeks of maternity leave following his birth, returning to work in July 2009.

13.     In November 2009, Plaintiff found out that she was pregnant again and immediately notified the Defendants.

14.     Approximately 20 weeks into her pregnancy, Plaintiff started going into pre-term labor and beginning April 11, 2010, Plaintiff's doctor put her on bed rest.

15.     Plaintiff began leave due to her pregnancy on April 12, 2010.

2

# EXHIBIT 1

16.    After discussions with her immediate supervisor, Brian Brinks, and Som Baccam with Human Resources, it was decided that she would be on leave from work until August 2, 2010.

17.    Plaintiff gave birth to her son on May 18, 2010.

18.    On June 21, 2010, Karla Neel, the head of Plaintiff's department, notified Plaintiff that her short term disability leave ran out on July 12, 2010, that she needed to return to work, and that Ms. Neel would hold Plaintiff's position only until July 19, 2010.

19.    On July 19, 2010, Plaintiff returned to work at approximately 10:00 a.m., after taking her son to his eight week well-baby check-up.

20.    Plaintiff started her computer and then told her supervisor, Mr. Brinks, that she needed to "see about getting a room," in order to pump breast milk for her infant son.

21.    Plaintiff had last nursed her son at approximately 6:50 a.m. that morning, and he was nursing about every 3 hours.

22.    Plaintiff was beginning to feel uncomfortable because it had been more than three hours since the last time she had expressed milk.

23.    Plaintiff inquired about a private room to express milk and was told by Karla Neel that it was "not her department."

24.    Plaintiff took it upon herself to ask the security guard who informed her she should see the company nurse, Sara Sagers.

25.    Prior to Plaintiff's return to work, no one had ever informed Defendants who she should see about getting a room or how to gain access to a lactation room.

3

# EXHIBIT 1

26.     Ms. Sagers informed Plaintiff that Nationwide policy required her to fill out paperwork to be placed on a list for the lactation rooms and that there would be a three-day waiting period while this paperwork was processed.

27.     Ms. Sagers printed out a copy of this paperwork and also emailed it to Plaintiff's Nationwide email account.

28.     Prior to Plaintiff's return to work, Defendants never informed Plaintiff that there was a three-day waiting period required in order to use Nationwide's lactation room or that forms needed to be filled out.

29.     Plaintiff informed Ms. Sagers that she needed to express milk immediately.

30.     Ms. Sagers told Plaintiff that she could use a wellness room, although she added that Nationwide did not recommend that nursing mothers use wellness rooms to express milk because the rooms are intended for sick people and her milk might become contaminated because it could be exposed to illnesses.

31.     Ms. Sagers directed Plaintiff to a wellness room that was currently occupied by a sick person, but suggested it might be available if she returned in 15 to 20 minutes.

32.     Ms. Sagers also informed Plaintiff that the wellness room had a broken door, so she would have to lodge the chair up against the door and sit in it while she pumped so that if someone walked in on her, her body in the chair would block the intruder from seeing her breasts.

33.     Ms. Sagers also informed Plaintiff that she should tell her supervisor that she would make up any time that she missed due to expressing milk.

34.     Despite being in extreme discomfort and needing to express milk, Plaintiff went back to her desk to work while she waited to check on the wellness room again.

# EXHIBIT 1

35.     While waiting to check on the wellness room, Mr. Brinks and Plaintiff had a meeting regarding the status of her work.

36.     Mr. Brinks was supposed to take over Plaintiff's work during her leave, but nothing had been done while she had been gone.

37.     During the meeting, Mr. Brinks notified Plaintiff that she had only two weeks, until August 1, 2010, to get caught up on all the work that had accumulated during her eight-week absence.

38.     Mr. Brinks notified Plaintiff that she would need to work a great deal of overtime to get caught up.

39.     Mr. Brinks warned Plaintiff that he would begin to discipline her if she was not completely caught up within two weeks.

40.     Plaintiff began to panic about all the extra hours it would take her to get caught up on the work that had not been done during her maternity leave, as well as the time necessary to make up for the breaks she would need to express milk for her newborn baby.

41.     Plaintiff knew that she would never be able to catch up by August 1 and that she would begin to be written up at that time.

42.     After learning of Nationwide's policy requiring a three-day waiting period to be placed on the list to reserve a lactation room, her urgent need to express milk and Defendants' unrealistic and unreasonable expectations about her work production immediately upon her return from maternity leave, Plaintiff felt like she had no choice but to resign her employment.

43.     Plaintiff tried to discuss her feelings of despair with Ms. Neel and explore any options that might be available to her to accommodate her need to provide breast milk for her son.

# EXHIBIT 1

44.     Ms. Neel told Plaintiff to"do what she felt she needed to do."  She handed Plaintiff a piece of paper and encouraged her to tender her resignation immediately and instructed Plaintiff on what to write.

45.     Ms. Neel also asked Plaintiff to "leave her things" and asked Plaintiff to act as if she was just leaving for lunch so as to not cause a disturbance.

46.     Plaintiff was constructively discharged on July 19, 2010.

47.     Karla Neel was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

48.     Sara Sagers was an employee and agent of Defendant Nationwide acting at all material times in the scope of her employment and agency.

## COUNT I
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### SEX AND PREGNANCY DISCRIMINATION

49.     Plaintiff repleads paragraphs 1 through 48 as if fully set forth herein.

50.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her pregnancy and sex in violation of the Iowa Civil Rights Act.

51.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

52.     Defendants acted with willful and wanton disregard for Plaintiff's rights and safety.

# EXHIBIT 1

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.     Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her pregnancy and sex in violation of Title VII of the Civil Rights Act of 1964.

55.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

56.     Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter it and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be

# EXHIBIT 1

injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Patient Protection and Affordable Care Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury in the above-captioned matter.

FIEDLER & TIMMER, P.L.L.C.

Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT 0010357
whitney@employmentlawiowa.com
2900 – 100th Street, Suite 209
Urbandale, IA 50322
Telephone:  (515) 254-1999
Fax:  (515) 254-9923
ATTORNEYS FOR PLAINTIFF

9

# EXHIBIT 1

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.     Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her pregnancy and sex in violation of Title VII of the Civil Rights Act of 1964.

55.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

56.     Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter it and others, for interest as allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be

# EXHIBIT 1

just in the circumstances and consistent with the purpose of Title VII of the 1964 Civil Rights

Act.

## COUNT III
## VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
### 29 U.S.C. § 4207

57.     Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.     Defendants were required to provide Plaintiff with reasonable time to express

breast milk in a private location, free from intrusion and shielded from the view of the public or

other employees, at the time necessary to express breast milk.

59.     Defendants refused Plaintiff reasonable time to express breast milk.

60.     Defendants failed to provide Plaintiff with a private location free from intrusion

and shielded from the view of other employees.

61.     Defendants refused to provide Plaintiff a room at the time she needed to express

breast millk.

62.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in

the future suffer damages including, but not limited to mental and emotional distress; anguish;

humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life;

lost wages; benefits; and other emoluments of employment.

63.     Defendants acted with malice and reckless indifference for Plaintiff's rights and

safety.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in

an amount which will fully and fairly compensate her for her injuries and damages, for punitive

damages in an amount sufficient to punish Defendants and deter them and others, for interest as

allowed by law, for attorney's fees, for the costs of this action, for appropriate equitable and