# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3780
_____

Angela Ames

*Plaintiff - Appellant*

v.

Nationwide Mutual Insurance Company; Nationwide Advantage Mortgage Company; Karla Neel

*Defendants - Appellees*

------------------------------

Equal Employment Opportunity Commission

Amicus on Behalf of *Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 19, 2013
Filed: March 13, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Angela Ames appeals from the district court's[1] grant of summary judgment to Nationwide Mutual Insurance Company, Nationwide Advantage Mortgage Company, and Karla Neel (collectively, Nationwide) on her sex- and pregnancy-based employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6.  We affirm.

I.

Ames was hired as a loss-mitigation specialist at Nationwide Mutual Insurance in October 2008.  Timely completion of work is central to this position and "a high priority" for the loss-mitigation department as a whole.  Brian Brinks was Ames's immediate supervisor, and Neel was the head of her department, as well as an associate vice president.

Ames gave birth to her first child on May 2, 2009, and took eight weeks of maternity leave following his birth.  In October 2009, Ames discovered that she was pregnant with her second child.  Ames suffered pregnancy complications, and her doctor ordered her on bed rest in April 2010.

When Ames discussed her bed rest with Neel, Neel rolled her eyes and said that she never had to go on bed rest when she was pregnant and that she never had complications with her pregnancies.  Neel had previously expressed to Ames her belief that a woman should not have a baby shower while she is pregnant because the baby could die in utero.  According to Ames, Brinks remarked to others in the office about Ames's maternity leave, stating, "Oh, yeah, I'm teasing her about only taking a week's worth of maternity leave.  We're too busy for her to take off that much

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

work." Nationwide trained Angie Ebensberger, who was a temporary employee at Nationwide Mutual Insurance, to fill Ames's position during her maternity leave.

Ames gave birth to her second child prematurely on May 18, 2010. Nationwide thereafter informed Ames that her Family Medical Leave Act (FMLA) maternity leave would expire on August 2, 2010. On June 16, 2010, Neel called Ames to inform her that there had been a mistake in calculating her FMLA maternity leave and that her maternity leave would expire on July 12, 2010. Neel also told Ames that she could take additional unpaid leave until August 2010, but that doing so would "cause[] red flags," that she "[didn't] want there to be any problems like that," and that she "[didn't] want there to be any issues down the road." Neel told Ames that she wanted to find a mutually agreeable date of return and offered to extend Ames's maternity leave an additional week.

Prior to returning to work, Ames asked a Nationwide disability case manager where she could express milk when she returned to work and was told that she could use a lactation room. Ames returned to work on July 19, 2010, when her son was two months old and breastfeeding every three hours. By the time Ames had arrived at work that morning, more than three hours had passed since her son had last nursed. Ames asked Neel about using a lactation room. Neel replied that it was not her responsibility to provide Ames with a lactation room. Ames then went to the security desk to inquire about the lactation rooms and was directed to see Sara Hallberg, the company nurse.

Hallberg informed Ames of Nationwide's lactation policy, which allowed employees to gain badge access to the company's lactation rooms after completing certain paperwork that required three days to be processed. The lactation policy was available to Nationwide's employees on the company's intranet, and Nationwide provided information regarding the policy at its quarterly maternity meetings. Ames's conversation with Hallberg was the first time that Ames had heard of the

policy. Hallberg sent a copy of the lactation policy to Ames via email. Hallberg also requested that security "grant Angela Ames access to the lactation rooms as soon as possible." When Ames told Hallberg that she needed to express milk immediately, Hallberg suggested that Ames use a wellness room. Because the wellness room was occupied, Hallberg told Ames to return in fifteen or twenty minutes. Hallberg warned Ames that lactating in a wellness room might expose her breast milk to germs.

While waiting for the wellness room, Ames met with Brinks to discuss the status of her work. Brinks told Ames that none of her work had been completed while she was on maternity leave, that she had two weeks to complete that work, that she would have to work overtime to accomplish this, and that if she failed to catch up, she would be disciplined. After the meeting with Brinks, Ames returned to Neel's office to see if Neel could help her find a place to lactate. Neel again told Ames that she was unable to help. Neel testified that Ames was visibly upset and in tears. Neel then handed Ames a piece of paper and a pen and told Ames, "You know, I think it's best that you go home to be with your babies."[2] Neel dictated to Ames what to write on the piece of paper to effectuate her resignation.

Ames sued Nationwide, alleging sex and pregnancy discrimination. Her complaint asserted that the unavailability of a lactation room, "her urgent need to express milk," and Nationwide's "unrealistic and unreasonable expectations about her work production" forced her to resign from her position. Nationwide moved for summary judgment, arguing that there was no genuine dispute of material fact that Nationwide discriminated against Ames. Specifically, Nationwide argued that Ames had not shown constructive discharge. Ames countered that she had set forth direct and indirect evidence of discrimination and that she had shown constructive

---

[2] At other places in Ames's deposition and in her brief opposing Nationwide's motion for summary judgment, Ames attributes to Neel different versions of this statement, such as "[m]aybe you should just stay home" and "[m]aybe you should just go home with your babies."

discharge. Ames did not argue that Nationwide had actually discharged her. The district court granted Nationwide's motion, and this appeal followed.

## II.

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." McDonald v. City of Saint Paul, 679 F.3d 698, 703 (8th Cir. 2012) (quoting Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011)). Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). As amended by the Pregnancy Discrimination Act of 1978, sex-based discrimination under Title VII includes discrimination based on "pregnancy, childbirth, or related medical conditions." Id. § 2000e(k). The ICRA provides the same prohibitions. See Iowa Code § 216.6. Because Ames presents no separate arguments under the ICRA, we analyze her ICRA claims together with her Title VII claims under the same analytical framework used for Title VII claims. See Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 913 n.5 (8th Cir. 2007); see also Falczynski v. Amoco Oil Co., 533 N.W.2d 226, 230 n.2 (Iowa 1995).

An employee's Title VII claim for sex discrimination can survive summary judgment in one of two ways. First, the employee may produce direct evidence of discrimination—that is, "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Elam v. Regions Fin. Corp., 601 F.3d 873, 878 (8th Cir. 2010) (quoting McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir.

2009)). Alternatively, the employee may create an inference of discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), by showing that: (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Elam, 601 F.3d at 878-79. Ames purports to have demonstrated both direct evidence of sex discrimination and an inference of unlawful discrimination based on her pregnancy under McDonnell Douglas. Because in either case Ames must demonstrate that she suffered an adverse employment action, we focus on that question in resolving this appeal.

Ames contends that she has presented sufficient evidence to demonstrate that Nationwide constructively discharged her or, in the alternative, actually discharged her. We discuss each theory of discharge in turn.

A.

"To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 418 (8th Cir. 2010). "In addition, an employee must give her employer a reasonable opportunity to resolve a problem before quitting." Sanders v. Lee Cnty. Sch. Dist. No. 1, 669 F.3d 888, 893 (8th Cir. 2012). "Evidence of the employer's intent can be proven 'through direct evidence or through evidence that the employer could have reasonably foreseen that the employee would quit as a result of its actions.'" Id. (quoting Fercello v. County of Ramsey, 612 F.3d 1069, 1083 (8th Cir. 2010)).

Ames argues that Nationwide treated her in a manner that would have caused any reasonable person to resign. Rather than presenting one event as the defining moment, Ames points to a number of incidents and circumstances that she claims

-6-

collectively constitute constructive discharge. First, Neel and Brinks made negative statements regarding Ames's pregnancies. Second, Nationwide miscalculated the length of Ames's maternity leave, and Neel insisted that she return to work early or risk raising red flags. Third, Nationwide trained Angie Ebensberger to fill Ames's position during Ames's maternity leave. Fourth, Ames was not given immediate access to a lactation room and was told that she had to wait three days for badge access. Fifth, Brinks told Ames that none of her work had been completed while she was on maternity leave, that she had to work overtime to get caught up, and that if she did not catch up, she would be disciplined. Sixth, Neel did nothing to assist Ames in finding a place to lactate and instead told Ames, "I think it's best that you go home to be with your babies." And seventh, at the time Ames resigned, it had been more than five hours since she had last expressed milk and she was in considerable physical pain.

Nationwide's several attempts to accommodate Ames show its intent to maintain an employment relationship with Ames, not force her to quit. See Fercello, 612 F.3d at 1083 (holding that the employer's willingness to accommodate the employee undercut the employee's claim of constructive discharge). Although Nationwide incorrectly calculated Ames's FMLA leave, it made efforts to ameliorate the impact of its mistake. Neel did not discourage Ames from taking the FMLA leave to which Ames was entitled. Furthermore, even though Neel discouraged Ames from taking unpaid leave up to August, Neel gave Ames an extra week of maternity leave, which gave Ames more than thirty days to prepare for her return to work. Rather than intentionally rendering Ames's work conditions intolerable, the record shows that Nationwide sought to accommodate Ames's needs.

Moreover, Ames was denied immediate access to a lactation room only because she had not completed the paperwork to gain badge access. Every nursing mother was required to complete the same paperwork and was subjected to the same three-day waiting period. Further, Hallberg tried to accommodate Ames by allowing her

-7-

to use a wellness room as soon as it was available and by requesting that Ames receive expedited access to the lactation rooms. During Ames's meeting with Brinks, Brinks relayed his expectations of her in the upcoming weeks and the consequences of failing to meet those expectations. Brinks's expectations of Ames were not unreasonable, for he expected all of his employees to keep their work current, given the high priority that timely work-completion is accorded within the loss-mitigation department. That Nationwide's policies treated all nursing mothers and loss-mitigation specialists alike demonstrates that Nationwide did not intend to force Ames to resign when it sought to enforce its policies. See Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 797 (8th Cir. 1996) ("Where, as here, employees are treated alike, 'no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign.'" (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985))).

While we are doubtful whether Neel's comment that it was best that Ames go home with her babies might support a finding of intent to force Ames to resign, assuming that it would, Ames's constructive discharge claim still fails because she did not give Nationwide a reasonable opportunity to address and ameliorate the conditions that she claims constituted a constructive discharge. See, e.g., Sanders, 669 F.3d 888; Alvarez, 626 F.3d 410; Coffman v. Tracker Marine, L.P., 141 F.3d 1241 (8th Cir. 1998). The only way in which Ames attempted to alert Nationwide to the problem was by asking Neel twice about obtaining a lactation room and by approaching Hallberg about the same problem, all on the morning that Ames resigned. Moreover, when Ames approached Hallberg about the problem, Hallberg suggested to Ames a temporary solution. Although this solution may not have been immediately available or ideal, Ames had an obligation not to jump to the conclusion that the attempt would not work and that her only reasonable option was to resign. See Trierweiler v. Wells Fargo Bank, 639 F.3d 456, 461 (8th Cir. 2011) ("Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." (quoting Smith v. Goodyear Tire & Rubber Co.,

895 F.2d 467, 473 (8th Cir. 1990))). Ames also failed to avail herself of the channels of communication provided by Nationwide to deal with her problem. See Coffman, 141 F.3d at 1247-48 (reversing a constructive-discharge judgment in part because the employee had an avenue of redress within the company and failed to use it). Nationwide's Compliance Statement, of which Ames was aware, provides: "If you have reason to believe that Nationwide is not in compliance with the law, contact your local HR professional, the Office of Ethics, or the Office of Associate Relations to report the circumstances immediately." By not attempting to return to Hallberg's office to determine the availability of a wellness room or to contact human resources, Ames acted unreasonably and failed to provide Nationwide with the necessary opportunity to remedy the problem she was experiencing. We thus conclude that Ames has not met her burden of demonstrating constructive discharge.

Ames argues that we should apply the alternative constructive discharge analysis employed by the Seventh Circuit in non-hostile work environment cases. See EEOC v. Univ. of Chi. Hosps., 276 F.3d 326 (7th Cir. 2002). It is not open to us as a panel, however, to depart from the constructive discharge framework that we have consistently applied in non-hostile work environment cases. See, e.g., Trierweiler, 639 F.3d 456; Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490 (8th Cir. 1996); Johnson v. Bunny Bread Co., 646 F.2d 1250 (8th Cir. 1981).

B.

On appeal, Ames argues that a genuine issue of material fact exists as to whether she was actually discharged. Nationwide argues that Ames has waived this argument because she did not raise it in the district court. We agree.

"As a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below." Wright v. Newman, 735 F.2d 1073, 1076 (8th Cir. 1984); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the

-9-

general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); Seniority Research Grp. v. Chrysler Motor Corp., 976 F.2d 1185, 1187 (8th Cir. 1992) ("Normally, a party may not raise an issue for the first time on appeal as a basis for reversal."). The general rule against consideration of an issue not passed upon below, however, is not absolute. As the Supreme Court has stated:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. . . . Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result.

Singleton, 428 U.S. at 121 (internal quotation marks and citations omitted); see also Seniority Research Grp., 976 F.2d at 1187 ("There are exceptions, as where the obvious result of following the rule would be a plain miscarriage of justice or would be inconsistent with substantial justice."). Ames does not argue that this is a case where either "the proper resolution is beyond any doubt" or "where injustice might otherwise result." Singleton, 428 U.S. at 121. We thus decline to consider Ames's argument that she was actually discharged.

Ames relies on our decision in Schneider v. Jax Shack, Inc., 794 F.2d 383 (8th Cir. 1986), to argue that she did not waive her actual discharge argument. She contends that, under Schneider, "the district court should have focused first on the antecedent question of whether there had been an actual discharge[,]" id. at 384, before it decided whether she was constructively discharged, because her complaint and brief in opposition to Nationwide's summary judgment motion set forth facts suggesting that an actual discharge had occurred. Schneider, however, is procedurally distinguishable. In Schneider, the parties did not submit briefing in support of their respective positions to the district court. Id.; see also Schneider v.

Jax Shack, Inc., No. CV84-L-303, 1985 WL 570618, at *1 (D. Neb. May 10, 1985). The district court was asked to render a decision on the merits without trial based on stipulated evidence. Schneider, 1985 WL 570618, at *1. On appeal, we held that the district court should have addressed whether there had been actual discharge because its findings of fact suggested that an actual discharge had occurred. Schneider, 794 F.2d at 384.

A motion for summary judgment presents different opportunities and imposes different responsibilities on the parties. See Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."); see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (holding that the "failure to oppose a basis for summary judgment constitutes waiver of that argument" on appeal). Thus, unlike the plaintiff in Schneider, who did not submit briefing in support of her arguments, Ames had the opportunity to oppose Nationwide's motion and was responsible for presenting any argument that might have precluded summary judgment in favor of Nationwide. See Satcher, 558 F.3d at 735 ("It was [the plaintiff's] responsibility to show that there were genuine issues of material fact in the record that precluded the summary judgment Appellees sought below."); see also Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (quoting Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986))); Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal."); Frank C. Bailey Enters., Inc. v. Cargill, Inc., 582 F.2d 333, 334 (5th Cir. 1978) (per curiam) ("[A]n appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court."). Because Ames

failed to present her actual discharge argument to the district court in opposition to Nationwide's summary judgment motion, we conclude that she has waived that argument on appeal.

III.

The judgment is affirmed.

_____